07-1183-ag
Gertsenshteyn v. Mukasey

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2007

(Argued:  March 12, 2008                    Decided: September 25, 2008)

Docket No. 07-1183-ag

_____

BORIS IZRAYLOVICH GERTSENSHTEYN,

*Petitioner*,

– v. –

UNITED STATES DEPARTMENT OF JUSTICE, MICHAEL B. MUKASEY,[*] ATTORNEY GENERAL,

*Respondent.*

_____

Before: CALABRESI and B.D. PARKER, *Circuit Judges*, and UNDERHILL, *District Judge*.[**]

_____

Petition for review of a published decision of the Board of Immigration Appeals ("BIA") affirming a decision by Immigration Judge ("IJ") Alan Page and ordering the petitioner removed for having been convicted of an aggravated felony.  We hold that the BIA erred in rejecting the

---

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Michael B. Mukasey has been substituted for former Attorney General Alberto R. Gonzales as a respondent in this case.

[**] The Honorable Stefan R. Underhill, United States District Judge for the District of Connecticut, sitting by designation.

legal framework that our Circuit applies to evaluating whether an alien has been convicted of an aggravated felony for purposes of removability under the Immigration and Nationality Act ("INA"), § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii). And as we are not confident that the BIA would reach the same decision upon a reconsideration cleansed of errors, the petition for review is GRANTED, the decision of the BIA is VACATED, and this case is REMANDED for further proceedings.

_____

JESSE LLOYD, Neil A. Weinrib & Associates, New York, N.Y., *for Petitioner*.

ANDREW M. MCNEELA, Assistant United States Attorney (Ross E. Morrison, *Of Counsel*), *for* Michael J. Garcia, United States Attorney for the Southern District of New York, New York, N.Y., *for Respondent*.

_____

CALABRESI, *Circuit Judge*:

A flurry of cases have reached this Court recently dealing with how our categorical and modified categorical approaches apply to removal proceedings and what the IJ and BIA may look to when determining whether an alien has been convicted of an "aggravated felony" for the purposes of the Immigration and Nationality Act ("INA"), § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii). *See, e.g.*, *James v. Mukasey*, 522 F.3d 250 (2d Cir. 2008); *Wala v. Mukasey*, 511 F.3d 102 (2d Cir. 2007); *Dulal-Whiteway v. U.S. Dep't of Homeland Security*, 501 F.3d 116 (2d Cir. 2007). Because the petitioner in this case seeks review of a published, precedential opinion by the BIA that abandons prior BIA precedent and seeks to allow immigration courts greater leeway to examine the conduct underlying an alien's prior conviction, we are required to examine how this new approach fits with the law of our Circuit.

**BACKGROUND**

-2-

I. The Removal Proceedings

Petitioner Boris Izraylovich Gertsenshteyn ("Petitioner") is a citizen of the Ukraine who entered the United States as a refugee and subsequently adjusted his status to that of a lawful permanent resident. On July 30, 2001, in connection with his employment with Sea Pearl Escort, a prostitution service, Petitioner was convicted of violating and conspiring to violate 18 U.S.C. § 2422(a), a statute prohibiting the enticing of individuals to travel in interstate or foreign commerce to engage in prostitution.[1]  And on December 17, 2002, the Immigration and Naturalization Service ("INS") placed Petitioner in removal proceedings, pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii). The INS charged him with having been convicted of the aggravated felony set forth in 8 U.S.C. § 1101(a)(43)(K)(ii) ("an offense that . . . is described in section 2421, 2422 or 2423 of Title 18 . . . if committed for commercial advantage"), as well as that set forth in 8 U.S.C. § 1101(a)(43)(U) ("an attempt or conspiracy to commit an offense described in [§ 1101(a)(43)]").

Petitioner appeared before the Immigration Court in April 2003 and contested removability, arguing that his crimes of conviction had not been "committed for commercial advantage."  IJ Alan Page disagreed.  On January 20, 2004, he determined that both of Petitioner's convictions were for aggravated felonies.  "[I]t was clear from a reading of the overt

---

[1] The counts to which he pleaded guilty alleged that "[o]n or about and between October 1, 1997 and December 9, 1998," he "knowingly and intentionally conspired to persuade, induce, entice and coerce individuals to travel in interstate and foreign commerce to engage in prostitution and sexual activities for which a person can be charged with a criminal offense, in violation of [18 U.S.C. §] 2422(a)," and that "[o]n or about and between July 26, 1998 and August 22, 1998," he "did knowingly and intentionally persuade, induce, entice and coerce two women to travel in interstate and foreign commerce to engage in prostitution and sexual activities for which a person can be charged with a criminal offense."

acts [alleged in the Indictment]," the IJ explained, that Petitioner was involved in "the Sea Pearl Escort Service," and "that [he] and his co-conspirators made arrangements so that women could be transported from outside of New York State, apparently from Russia, to the United States for the purpose of engaging in prostitution." Specifically, Petitioner "made a number of phone calls in order to arrange for at least two women to come to the United States from abroad to work as prostitutes for the Sea Pearl Escort Service," and "[p]rostitution by definition is basically performing sexual activity for hire." These circumstances, the IJ concluded, demonstrated that Petitioner committed his crimes "for commercial advantage." The IJ further found that Petitioner's offenses were "particularly serious," rendering him ineligible for withholding of removal.

## II. The BIA's First Decision, the First Appeal to Our Court, and the Stipulated Remand

Petitioner appealed to the BIA, and, after some procedural problems that are not relevant to the instant Petition, argued, *inter alia*, that the IJ erred in finding that he had been convicted of an aggravated felony. In a decision dated July 5, 2005, the BIA denied the appeal. First, the BIA rejected the argument that only an individual who has an ownership in a commercial business can commit a crime for a "commercial advantage." While, the BIA explained, the phrase "commercial advantage" is not defined in the INA or the implementing regulations, Black's Law Dictionary described it as "any type of business or activity which is carried on for a profit." On this basis, the BIA held that "a 'commercial advantage' would be 'any profit or other benefit derived from any type of business or activity.'" Second, the BIA concluded that the evidence in the record, along with the testimony by Petitioner during the removal hearing, clearly showed

-4-

that Petitioner "created a profit for the prostitution business for which he worked," even though he himself was just a salaried employee. His actions of "placing clients with prostitutes, collecting payment from the prostitutes, answering telephones, instructing prostitutes as to decorum to be observed with clients, and placing advertisements in the local press were done on behalf of the prostitution business"; his "criminal acts were designed to generate revenue and aimed at enhancing the profitability of the criminal enterprise for which he worked." Last, the BIA agreed with the IJ's finding that Petitioner's conviction constituted a "particularly serious crime."[2]

In a separate concurrence, Board Member Filppu discussed an issue not raised by the parties: whether the law required the agency to apply the "categorical"/"modified categorical" framework – the framework that is typically applied when assessing an alien's prior conviction for purposes of removal – when determining whether Petitioner committed the crimes of conviction for "commercial advantage" (as Petitioner would have had to have done for his crime of conviction to fall within the boundaries of the aggravated felony charged). Board Member Filppu answered this question in the negative. "'[C]ommercial advantage' is not an element of [Petitioner's] offense," he reasoned, so it "must be subject to proof independent of the 'conviction record' constraints."

Petitioner filed a timely petition for review with this Court. But ultimately, upon agreement of the parties, we entered a Stipulation and Order of Settlement and Dismissal.

---

[2] The BIA also addressed an ineffective assistance of counsel argument that Petitioner has since abandoned.

Pursuant to the terms of that Stipulation and Order, the Court remanded the matter to the BIA to address:

> (a) whether the "categorical approach" to determining whether a criminal offense satisfies a particular ground of removal applies to the inquiry as to whether a violation of 18 U.S.C. § 2422(a) meets the aggravated felony definition under INA § 101(a)(43)(K)(ii); and
>
> (b) whether information beyond the record of conviction may be relied upon in determining whether an alien's violation of 18 U.S.C. § 2422(a) was for "commercial advantage."

(internal citation omitted)]

III.  The BIA's Published, Precedential Decision

On March 14, 2007, the BIA issued a published decision.  It held:  (1) that the categorical and modified categorical approaches do not apply to the agency's determination of whether an alien's conviction was "committed for commercial advantage" under 8 U.S.C. § 1101(a)(43)(K)(ii), and that the agency could therefore rely on evidence extrinsic to the record of conviction to make that determination; and (2) that the record evidence showed that Petitioner committed his crimes of conviction for "commercial advantage." *In re Gertsenshteyn*, 24 I. & N. Dec. 111, 113-17 (B.I.A. 2007).

A.      *The Application of the Categorical and Modified Categorical Approaches*

According to the BIA, determining whether an alien's conviction is an aggravated felony under 8 U.S.C. § 1101(a)(43)(K)(ii) requires "two separate but related" inquiries. *Id.* at 112. The first is whether the alien was convicted of one of the offenses described in the listed federal statutes, 18 U.S.C. §§ 2421, 2422, and 2423; this inquiry "must be made by reference to the record of conviction alone." *Id*. The second is whether the offense was "committed for commercial advantage," and this inquiry may involve looking beyond the statutory elements of the crime to the conduct underlying the offense. Further, the fact in question "may be proved by any evidence, including evidence outside the record of conviction." *Id.*

To explain its holding – which was a clear departure from BIA precedent and Circuit law – the BIA focused on Congress's intent when expanding the "aggravated felony" definition at 8 U.S.C. § 1101(a)(43) to include the crime set forth at § 1101(a)(43)(K)(ii). As originally enacted in April 1996, § 1101(a)(43)(K)(ii) defined as an aggravated felony the commission of "an offense that . . . is described in" any one of three federal statutory provisions "for commercial advantage." At that time, however, none of the provisions listed had a "commercial advantage" element. *In re Gertsenshteyn*, 24 I. & N. Dec. at 113-14. So, the BIA reasoned, if immigration courts were only allowed to consider the elements that the criminal trier of fact was required to find in order to convict the alien, they would not be able to deem *any* offense an "aggravated felony" under § 1101(a)(43)(K)(ii).[3] *Id.* at 114. Clearly, the BIA concluded, this is not what

---

[3] The BIA conceded that in 2003, Congress added an offense to 18 U.S.C. § 2423(d) that requires that the crime be committed "for the purpose of commercial advantage or private financial gain." But in the BIA's view, that amendment is not relevant to determining congressional intent in 1996, when 8 U.S.C. § 1101(a)(43)(K)(ii) was enacted. The BIA further noted that six out of the seven offenses referenced in 18 U.S.C. §§ 2421, 2422, and 2423 still lack a "commercial advantage" element. 24 I. & N. Dec. at 114 n.4.

Congress intended. Rather, according to the BIA, Congress must have meant to allow immigration courts to consider the circumstances underlying the alien's conviction to determine whether commercial advantage was present.

The BIA claimed that its interpretation was consistent with "the structure of the aggravated felony provision [8 U.S.C. § 1101(a)(43)] as a whole." *Id.* As "Congress has expanded the scope of crimes deemed to qualify as aggravated felonies," it "has frequently included requirements that extend beyond the elements of the offenses," such as the length of the sentence given for the conviction. *Id.* And some of these requirements – like the "commercial advantage" requirement at issue here – cannot, in the normal course, be ascertained by consulting conviction records.[4] *Id.* at 115. Accordingly, "the parties must be able to offer evidence outside the strict confines of the record of conviction" – "the presentence report, the [alien's] own admissions, and any other relevant evidence pertaining to aspects of the criminal conviction." *Id.* at 115-16. "Otherwise, [8 U.S.C. § 1101(a)(43)(K)(ii)] . . . would be rendered of little or no effect . . . ." *Id.* at 116.

As for all the reasons that it had previously cited in support of *not* looking behind a record of conviction,[5] the BIA dismissed them out of hand. "Although some burden to the system may

---

[4] The BIA acknowledged that "on occasion it may be possible to convincingly deduce commercial advantage from some conviction records, such as those describing extensive conspiracies and criminal business enterprises," but found it "unlikely" that a criminal charging document would allege, or a plea colloquy explore, a "commercial advantage" purpose for an offense that did not include a "commercial advantage" element. *Id.* at 115, 114 n.5.

[5] The BIA had, in an April 1996 decision, stated that "the principle of not looking behind a record of conviction" was *the only workable approach in cases where deportability is premised on the existence of a conviction.* *In re Pichardo-Sufren*, 21 I. & N. Dec. 330, 335 (B.I.A. 1996) (emphasis added). "If we were to allow evidence that is not part of the record of conviction as proof of whether an alien falls within the reach of section

result from the inapplicability of the categorical approach in this instance, we believe such a burden to be minor." *Id.* at 116. And "[i]n any case, we find that it is necessary in order to give effect" to Congress's inclusion of the "if committed for commercial advantage" language in 8 U.S.C. § 1101(a)(43)(K)(ii). *Id.*

B. *The Record Evidence that Petitioner Committed the Crimes of Conviction for "Commercial Advantage"*

Next, the BIA addressed whether Petitioner committed the offenses for which he was convicted "for commercial advantage." Echoing its earlier decision in this case, the BIA quickly answered "yes": "The evidence of record, including [Petitioner's] testimony, reflects that he knew that his employment activity was designed to create a profit for the prostitution business for which he worked." *Id.* "That activity included placing clients with prostitutes, collecting payment from the prostitutes, answering telephones, instructing prostitutes as to the decorum to be observed with clients, and placing advertisements in the local press." *Id.*

IV. The Instant Petition for Review

---

241(a)(2)(C) of the Act," the BIA explained in that decision,

> [W]e essentially would be inviting the parties to present any and all evidence bearing on an alien's conduct leading to the conviction, including possibly the arresting officer's testimony or even the testimony of eyewitnesses who may have been at the scene of the crime. Such an endeavor is inconsistent both with the streamlined adjudication that a deportation hearing is intended to provide and with the settled proposition that an Immigration Judge cannot adjudicate guilt or innocence.

*Id.*

Petitioner filed with our Court a timely petition for review of the BIA's decision. He argues (1) that the BIA improperly looked beyond the elements of 18 U.S.C. § 2422(a) (*i.e.*, it improperly went beyond the categorical approach), (2) that even if the BIA was allowed to "modify" the categorical approach, it was not allowed to do what it did and look beyond facts to which he actually and necessarily pleaded in order to establish the elements of the offense, and (3) that even if the BIA were allowed to review the underlying facts, it still erred because Petitioner's actions do not demonstrate that his crimes were committed for "commercial advantage."

In response, the Government argues that the BIA correctly decided not to apply the categorical or the modified categorical approach to the "committed for commercial advantage" component of 8 U.S.C. § 1101(a)(43)(K)(ii). The Government emphasizes that in that particular provision of the INA, Congress used the word "committed" instead of the word "convicted," thereby signaling, in the Government's view, its intent to allow a broader review of the petitioner's criminal record. The Government further argues that the BIA's construction of the term "commercial advantage" is entitled to deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), and that the BIA correctly applied its interpretation of the term to the facts of this case.

**DISCUSSION**

I. Jurisdiction

As of the codification of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, Div. C., Title III-B, 110 Stat. 3009-546 (Sept. 30, 1996), we lack jurisdiction to review any final order of removal against an alien who is deportable because

he or she was convicted of an aggravated felony, save for constitutional claims and questions of law. 8 U.S.C. § 1252(a)(2)(C). "This jurisdictional bar arises if: (1) the petitioner is an alien; and (2) he is deportable under one of the offenses enumerated in 8 U.S.C. § 1101(a)(43)." *Mugalli v. Ashcroft*, 258 F.3d 52, 54-55 (2d Cir. 2001). We retain jurisdiction, however, to determine whether this jurisdictional bar applies – that is, whether a petitioner satisfies the jurisdictional facts such as convictions for an aggravated felony. *Id.* at 55. "The determination of our jurisdiction is exclusively for the court to decide." *Id.* (internal quotation marks omitted).

II. Standard of Review

When the BIA has adopted the IJ's reasoning and offered additional commentary, we review the decision of the IJ as supplemented by the BIA. *Wala*, 511 F.3d at 105. Additionally, when our jurisdiction depends on the definition of a phrase used in the INA, and "when the intent of Congress is unclear and the agency's interpretation is reasonable," we accord the BIA's determination the deference mandated by the Supreme Court's decision in *Chevron*. *Mugalli*, 258 F.3d at 55 (internal quotation marks omitted). But when, in the course of interpreting the INA, the BIA has interpreted state or federal criminal laws, we review its decision *de novo*. *Id.*

III. Applicable Law: The INA's Definition of "Aggravated Felony" and Our Categorical and Modified Categorical Approaches

Under the INA, "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii). In a separate, definitional section, the INA defines "aggravated felony" to include a wide range of offenses, from the generic to the

specific, and it uses various means to describe the offenses contemplated. These include reference to the length of the sentence imposed, *see, e.g.*, *id.* § 1101(a)(43)(F) ("[A] crime of violence . . . for which the term of imprisonment [is] at least one year"), citation to federal statute, *see, e.g.*, *id.* § 1101(a)(43)(H) ("[A]n offense described in section 875, 876, 877, or 1202 of title 18 . . . ."), and mention of a particular circumstance or consequence of the offense, *see, e.g.*, *id.* § 1101(a)(43)(M)(i) ("[A]n offense that involves fraud or deceit in which the loss to the victim or victims exceeds $10,000").

We have adopted a "categorical approach" to deciding whether a crime of conviction fits within the definition of "aggravated felony" in § 1101(a)(43), thereby rendering an alien removable under § 1227(a)(2)(A)(iii). *Santos v. Gonzales*, 436 F.3d 323, 325 (2d Cir. 2006) (per curiam). Under this approach, which is sometimes called the *Taylor-Shepard* approach, after *Taylor v. United States*, 495 U.S. 575 (1990), and *Shepard v. United States*, 544 U.S. 13 (2005), "the singular circumstances of an individual petitioner's crimes should not be considered, and only the minimum criminal conduct necessary to sustain a conviction under a given statute is relevant[.]" *Dalton v. Ashcroft*, 257 F.3d 200, 204 (2d Cir. 2001) (alteration in original) (internal quotation marks and citation omitted). In other words, "[w]e 'look to the elements and the nature of the offense of conviction, rather than to the particular facts relating to petitioner's crime.'" *Dulal-Whiteway*, 501 F.3d at 121 (quoting *Canada v. Gonzales*, 448 F.3d 560, 565 (2d Cir. 2006)).

We have, however, modified this approach in one respect: When "a criminal statute encompasses diverse classes of criminal acts – some of which would categorically be grounds for removal and others of which would not – we have held that [the] statute[] can be considered

-12-

'divisible'"; the agency may then "refer[] to the record of conviction for the limited purpose of determining whether the alien's conviction was under the branch of the statute that permits removal." *Dickson v. Ashcroft*, 346 F.3d 44, 48-49 (2d Cir. 2003). While we have yet to determine how to utilize this approach in all situations, *see, e.g.*, *Dulal-Whiteway*, 501 F.3d at 124-29 (noting that "we have not explicitly queried" how to approach statutes "where only one type of generic conduct . . . is proscribed, but an alien can commit the conduct both in ways that would render him removable . . . and in ways that would not"), its application to cases involving removal under 8 U.S.C. § 1227(a)(2)(A)(iii) remains the law of our Circuit.

IV. Whether the BIA Used the Proper Framework for Deciding Whether Petitioner Was Convicted of an "Aggravated Felony"

Petitioner's primary argument is that in determining whether he was convicted of the aggravated felony set forth in 8 U.S.C. § 1101(a)(43)(K)(ii), the BIA utilized a legally erroneous framework.[6] In effect, the BIA separated the question of whether Petitioner had a qualifying conviction under 18 U.S.C. §§ 2421, 2422, or 2423 from the question of whether Petitioner "committed" the offense for "commercial advantage" (*i.e.*, whether the circumstances of

---

[6] Petitioner focuses on the BIA's finding regarding 8 U.S.C. § 1101(a)(43)(K)(ii), even though he was also found to have been convicted of the aggravated felony set forth in 8 U.S.C. § 1101(a)(43)(U), because whether his conspiracy conviction under 18 U.S.C. § 371 constitutes an aggravated felony depends on whether he conspired to commit an offense that qualifies as an aggravated felony under 8 U.S.C. § 1101(a)(43)(K)(ii). *See Kamagate v. Ashcroft*, 385 F.3d 144, 152-53 (2d Cir. 2004) (explaining that "if the substantive crime that is the objective of a charged conspiracy fits within the aggravated felony definition of subsection [8 U.S.C. § 1101(a)(43)](R)" ("an offense relating to . . . counterfeiting"), the alien's conviction for conspiracy to commit the substantive crime "is also an aggravated felony by virtue of subsection (U)").

Petitioner's crime matched the description in § 1101(a)(43)(K)(ii)). It applied the categorical approach to the former. But as to the latter, it rejected both the categorical and the modified categorical approaches – and the corresponding restrictions these approaches place on what evidence the BIA may consider. Instead, it adopted an approach that allowed it to consider whatever it deemed relevant, including facts that Petitioner never admitted and to which he never pleaded guilty. Accordingly, Petitioner contends, the BIA's decision must be vacated and the case remanded.

The Government urges us to uphold the BIA's new approach. Besides repeating the BIA's argument that application of the categorical or modified categorical approach would render § 1101(a)(43)(K)(ii) a "nullity," the Government urges us to limit our categorical and modified categorical approaches to the factual circumstances of *Taylor* and *Shepard*. Those cases, which were about how to determine whether a defendant's conviction meets the definition of burglary in the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), involved a criminal statute that references *convictions* as opposed to *offenses committed*, the Government observes, and the legislative history of the ACCA indicated to the Supreme Court that Congress did not contemplate an elaborate factfinding process by the sentencing court. The *Taylor* and *Shepard* Courts were also concerned with the practical implications of requiring a district court to take and weigh extraneous evidence, both in terms of fairness to the defendant and burden on the court. Here, by contrast (or so the Government urges us to conclude), (1) the plain language of the aggravated felony definition at 8 U.S.C. § 1101(a)(43)(K)(ii) directs inquiry into whether

-14-

an offense was "*committed*" for "commercial advantage"[7]; (2) the legislative history of that definitional provision shows that Congress added the "committed" language after the Supreme Court decided *Taylor*, implying that Congress had no objection to factfinding in this context; and (3) the policy concerns raised in *Taylor* and *Shepard* are not at issue, because § 1101(a)(43)(K)(ii) contemplates a narrow factual inquiry that is no more difficult than the sort of inquiry that immigration courts routinely conduct when determining whether an applicant for relief from removal merits a favorable exercise of discretion.

As a preliminary matter, we address our standard of review. Petitioner claims that we owe no deference to the BIA's decision regarding how the categorical and modified categorical approaches apply to aggravated felony inquiries under the INA, as this matter falls outside the BIA's area of expertise. The Government argues the opposite, but claims that we need not decide the issue because the BIA's decision is correct irrespective of our standard of review. We agree that we need not resolve the issue, but we disagree with the Government's position. The BIA's decision cannot stand under either a deferential or a *de novo* standard of review.

---

[7] In this way the Government distinguishes *Dulal-Whiteway*, in which we held that the BIA was confined to looking at the record of conviction when determining whether the alien's fraud offense resulted in a loss to the victim in excess of $10,000. The Government points out that the aggravated felony at issue in *Dulal-Whiteway*, 8 U.S.C. § 1101(a)(43)(M)(i), does not use the word "committed." This argument is troublingly disingenuous. It is possible to distinguish *Dulal-Whiteway* on that ground, but as the Government is surely aware, the BIA has recently published a decision (relying heavily on its decision in this case) that rejects the holding of *Dulal-Whiteway* and concludes that immigration courts may look at whatever they please when determining whether loss to the victim exceeded $10,000 for purposes of § 1101(a)(43)(M)(i). *See In re Babasikov*, 24 I. & N. Dec. 306, 317-21 (B.I.A. 2007).

*A. Our Use of the Categorical Approach Follows from Congress's Use of the Word "Convicted" in 8 U.S.C. § 1227(a)(2)(A)(iii).*

Our holding today is grounded in history – specifically, the history of why we have applied the categorical approach to aggravated felony inquiries in the removal context. The primary reason was that 8 U.S.C. § 1227(a)(2)(A)(iii) – the provision of the INA that renders an alien removable for having been convicted of an aggravated felony (leaving to provision 8 U.S.C. § 1101(a)(43) the definition of "aggravated felony") – uses the word "convicted." That is, the INA premises removability not on what an alien has done, or may have done, or is likely to do in the future (tempting as it may be to consider those factors), but on what he or she has been formally *convicted* of in a court of law. Thus "[f]or nearly a century," the BIA recently observed, "the Federal circuit courts of appeals have held that where a ground of deportability is premised on the existence of a 'conviction' for a particular type of crime, the focus of the immigration authorities must be on the crime of which the alien was *convicted*, to the exclusion of any other criminal or morally reprehensible acts he may have *committed*." *In re Velazquez-Herrera*, 24 I. & N. Dec. 503, 513 (B.I.A. 2008).

One way to ensure proper focus on the conviction, we decided, was the method the Supreme Court applied in *Taylor* and *Shepard*. *See Ming Lam Sui v. INS*, 250 F.3d 105, 116-17 (2d Cir. 2001) (stating that "the *Taylor* opinion provides valuable guidance" to a determination of whether an alien's offense constitutes an "aggravated felony" under the INA because, like the statute at issue in *Taylor*, "§ 1227(a)(2)(A)(iii) renders deportable an alien who has been

-16-

'convicted' of an aggravated felony, not one who has 'committed' an aggravated felony").[8] We also reasoned (1) that "nothing in the legislative history [of 8 U.S.C. § 1227(a)(2)(A)(iii)] suggested a factfinding role for the BIA in ascertaining whether an alien had committed an aggravated felony, just as, in *Taylor*, nothing suggested such a role for the sentencing court in evaluating the factual basis of a prior burglary conviction," and (2) that "the practical evidentiary difficulties and potential unfairness associated with looking behind [an alien's] offense of conviction were no less daunting in the immigration [context] than in the sentencing context." *Dulal-Whiteway*, 501 F.3d at 125-26 (internal quotation marks and citations omitted). In sum, our use of the categorical approach emanates from our understanding of what Congress intended when it drafted § 1227(a)(2)(A)(iii), a provision that, like the provision in *Taylor* and *Shepard*, requires the Government to prove the existence of a qualifying *conviction* in order to make its case.

In the precedential opinion that the BIA issued in this case, it has taken a new approach. But it has done so *not* by reinterpreting 8 U.S.C. § 1227(a)(2)(A)(iii), the provision whose wording led it – and us – to adopt the categorical approach in the first place. Rather, it has focused entirely on a subpart of § 1101(a)(43), the provision of the INA that defines "aggravated felony." The BIA has authority to interpret that provision, and its interpretation – specifically, its sensible reading of the phrase "commercial advantage" – may well merit deference should the

---

[8] Other courts took the same view, applying the same reasoning. *See Gonzales v. Duenas-Alvarez*, 127 S. Ct. 815, 818 (2007) (noting that in determining whether a conviction falls within the scope of an offense listed as an "aggravated felony" in the INA, "the lower courts uniformly have applied the approach this Court set forth in [*Taylor*]."); *see also Ming Lam Sui*, 250 F.3d at 117 n.11 (cataloguing cases prior to *Ming Lam Sui* in which our Circuit and others have approved the use of the *Taylor-Shepard*, or categorical, approach in the removal context).

BIA reassert it in this case (on remand) or in others. But the BIA's discussion of § 1101(a)(43)(K)(ii) gives us no reason to depart from its, and our own, precedents regarding the more fundamental question of what is required of the agency – in the interests of both fairness and efficiency – when an alien's removability hinges on the existence of a prior conviction, however that conviction is defined.

Phrased another way, the fundamental problem with the decision on review is this: The government's position is that if the crime of which a defendant is convicted was done "nastily" it is, Congress had told us, an aggravated felony. But if it was done "benignly" it is not. That may well be so. But that does not alter what must be (and what may not be) examined to establish whether the crime of which the alien was convicted entailed nastiness or did not. To determine that, under our and Supreme Court precedents, the immigration court must look to what was *required to convict* the alien, *i.e.*, the elements of the crime of conviction. If the elements include nastiness, all well and good. If they do not, then looking at whether there was in fact nastiness necessarily undercuts the whole basis of the categorical approach, which is that what the alien was *convicted of* determines whether the felony is an aggravated one and not (unless it is needed to convict) the particular manner in which the crime was committed.[9]

---

[9] Our decision today is arguably in tension with *Ali v. Mukasey*, 521 F.3d 737, 743 (7th Cir. 2008), in which the Seventh Circuit "conclude[d] that when deciding how to classify convictions under criteria that go beyond the criminal charge – such as the amount of the victim's loss, or whether the crime is one of 'moral turpitude', the agency has the discretion to consider evidence beyond the charging papers and judgment of conviction." *Ali*, however, involved the BIA's decision to classify a particular conviction as a crime of "moral turpitude" for purposes of 8 U.S.C. § 1182(a)(2)(A)(i)(I) (rendering ineligible for admission "any alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of a crime involving moral turpitude"), a decision that precluded the concededly-removable petitioner from seeking adjustment of status. *Ali*, 521 F.3d at 739. *Ali*'s holding, then, is limited to that provision

*B. The BIA's Discussion of 8 U.S.C. § 1101(a)(43)(K)(ii) Provides No Logical Basis for Abandoning the Categorical Approach.*

The BIA's main argument against retaining the traditional approach is essentially a "practical" one. The BIA begins by noting that only a person who has been convicted of one of the federal statutes enumerated in § 1101(a)(43)(K)(ii), namely 18 U.S.C. § 2421 ("Transportation generally"), 2422 ("Coercion and enticement"), and 2423 ("Transportation of minors"), is rendered removable for having been convicted of the aggravated felony set forth in § 1101(a)(43)(K)(ii). And for the most part, those statutes do not contain "committed for commercial advantage" language, meaning—always according to the BIA—that unless immigration courts are allowed to look at the circumstances underlying an alien's conviction, § 1101(a)(43)(K)(ii) is a "nullity." We do not believe this is so, for that is not the *only* way to read § 1101(a)(43)(K)(ii). Section 1101(a)(43)(K)(ii) defines as an "aggravated felony" "an offense that . . . is *described* in section 2421, 2422 or 2423 of Title 18 of the United States Code . . . if committed for commercial advantage" (emphasis added). Any number of *state* statutes criminalize the offenses *described* in these federal statutes,[10] and some of those state statutes

---

of the INA.

In any case, *Ali*'s holding appears to follow from a premise that our Circuit has not embraced: that the BIA's decision to treat a petitioner's conviction as one involving moral turpitude (*i.e.*, its interpretation of the petitioner's statute of conviction and, if necessary, record of conviction) is entitled to the same deference as the BIA's determination that the presence of a particular element or elements makes a crime one of "moral turpitude" (*i.e.*, its interpretation of an ambiguous term in the INA). *See Wala v. Mukasey*, 511 F.3d 102, 105 (2d Cir. 2007) (observing that in our Circuit, we defer to the latter, in accordance with *Chevron*, but review the former *de novo*).

[10] *See, e.g.*, Cal. Penal Code § 266j (criminalizing the intentional transportation of a child under the age of sixteen for the purpose of any lewd or lascivious conduct); Tex. Penal Code § 20A.02 (prohibiting the knowing trafficking of a person with the intent or knowledge that the trafficked person will engage in prostitution); Vt. Stat. Tit. 13, §

-19-

include "if committed for commercial advantage" language as an element of the crime.[11]

Furthermore, the INA specifically says that the term "aggravated felony" applies to any offense described in § 1101(a)(43), "*whether in violation of Federal or State law*." 8 U.S.C. § 1101(a)(43) (emphasis added). And although the Government claims that it would not seek to apply § 1101(a)(43)(K)(ii) to convictions under state laws that resemble the listed federal statutes, the BIA has adopted precisely this reasoning in other cases.[12]

But, the BIA continues, at least as to the *federal* statutes listed, if confined to the categorical and modified categorical approaches, it will rarely be able to prove that an alien who was convicted of an offense described in § 1101(a)(43)(K)(ii) committed the crime for commercial advantage. The BIA concedes that "on occasion it may be possible to convincingly

---

2635(a)(1) ("A person shall not [i]nduce, entice or procure a person to come into the state or to go from the state for the purpose of prostitution or for any immoral purpose or to enter a house of prostitution in the state.").

[11] *See*, *e.g.*, Nev. Rev. Stat. § 201.360(1)(b) (defining as a felony the receipt of "any compensation, gratuity or reward, or promise thereof, for or on account of placing in a house of prostitution or elsewhere a person for the purpose of causing that person to cohabit with someone who is not the person's spouse"); Del. Code Tit. 11, § 787(b)(2)(a) ("A person is guilty of sexual servitude of a minor when the person knowingly: Recruits, entices, harbors, transports, provides or obtains by any means, a minor under 18 years of age, knowing that the minor will engage in commercial sexual activity, a sexually explicit performance, or the production of pornography."); *accord* 720 Ill. Comp. Stat. 5/10A-10(b); Miss. Code. § 97-3-54.1(1)(c); *see also* 720 Ill. Comp. Stat. 5/10A-10(c) (describing as a felony the knowing "benefit[], financially or by receiving anything of value, from participation in a venture which has engaged in [involuntary servitude of a minor]"); *accord* Miss. Code. § 97-3-54.1(2).

[12] *See, e.g.*, *In re Yusafi*, 2008 WL 339652 (B.I.A. Jan. 5, 2008) ("We agree with the Immigration Judge that the respondent's offense of conviction under section 43.26(a) of the Texas Penal Code is an 'offense described in' 18 U.S.C. § 2252(a)(4)(B), thereby qualifying it as an aggravated felony under section 101(a)(43)(I) of the Act."). We express no opinion, of course, as to the validity of this reading of the INA; we merely note the inconsistency of the BIA's position.

-20-

deduce commercial advantage from some conviction records, such as those describing extensive conspiracies and criminal business enterprises," but insists that the record of conviction (to which it would be confined under our modified categorical approach) is "unlikely" to provide immigration courts with the necessary information. *In re Gertsenshteyn*, 24 I. & N. Dec. at 115 & 114 n.5. We are inclined to doubt whether this is in fact as difficult as the government asserts. But we cannot, in any event, accept this line of reasoning.

We are aware that as Congress has expanded upon and particularized the INA's definition of "aggravated felony," immigration courts have been faced with a dissonance between (1) the aggravated behavior which the Department of Homeland Security, following Congress, says would make aliens' prior convictions aggravated felonies and (2) the elements of the criminal statutes under which the aliens in question were actually convicted. But the burden of this dissonance falls on the Government: When the Government has decided to seek the removal of a lawfully admitted alien under 8 U.S.C. § 1227(a)(2)(A)(iii), the Government is obligated to prove that the alien's *conviction* falls within the statutory definition of "aggravated felony." *See* 8 U.S.C. § 1229a(c)(3)(A); *Ibragimov v. Gonzales*, 476 F.3d 125, 131 (2d Cir. 2007). That the Government finds that task difficult in some cases is no reason for immigration courts to renounce the restrictions that the courts have said the law requires.

V. The BIA's Error Requires Remand

All that said, it may well be that under our rules for applying the categorical and modified categorical approaches, petitioner was, in fact, convicted of an aggravated felony, *i.e.*, of enticing, for commercial advantage, individuals to travel in interstate or foreign commerce to

engage in prostitution. But we cannot determine that ourselves. The BIA did not decide the case on that basis, and as a result, and despite our desire to conserve judicial resources, remand cannot be avoided. "'We may not enforce [an agency's] order by applying a legal standard the [agency] did not adopt.'" *Wangchuck v. Dep't of Homeland Security*, 448 F.3d 524, 532 (2d Cir. 2006) (quoting *NLRB v. Ky. River Cmty. Care, Inc.,* 532 U.S. 706, 721 (2001)); *see also Cao He Lin v. U.S. Dep't of Justice*, 428 F.3d 391, 400 (2d Cir. 2005) ("To assume a hypothetical basis for the IJ's determination, even one based in the record, would usurp her role.").

This case must, therefore, be sent back to the BIA, where, according to the legal framework that remains the law of this Circuit, the BIA must consider, first, whether Petitioner's "statute [of conviction] is 'divisible,' such that some categories of proscribed conduct render an alien removable and some do not." *Dulal-Whiteway*, 501 F.3d at 126. If the BIA concludes that the statute is *not* divisible, the proper course is to focus on "the intrinsic nature of the offense rather than on the factual circumstances surrounding [Petitioner's] violation." *Dalton*, 257 F.3d at 204. And unless "every set of facts violating [the] statute . . . satisf[ies] the criteria for removability," it may not deem Petitioner removable. *Dickson*, 346 F.3d at 48. If, instead, the BIA determines that Petitioner's statute of conviction *is* divisible, it may "consult the record of conviction to ascertain the category of conduct of which the alien was convicted," *Dulal-Whiteway*, 501 F.3d at 126, so long as it confines its inquiry to "facts to which [the] defendant actually and necessarily pleaded in order to establish the elements of the offense," *id.* at 131. We note that before the BIA, and in his brief to this Court, Petitioner has argued that 18 U.S.C. § 2422 may not be a divisible statute. We express no views as to the merits of Petitioner's

-22-

arguments. Our Circuit has recently spoken on divisibility,[13] and it is to those precedents that the BIA will, we are confident, give its careful consideration.

**CONCLUSION**

The BIA's decision in this case departs, with insufficient reason, from the legal framework that we have long used to decide whether an alien charged with removability under 8 U.S.C. § 1227(a)(2)(A)(iii) has been convicted of an aggravated felony. And we are not confident of what result it would reach under the proper framework. Accordingly, we VACATE the BIA's decision and REMAND this case, so that the BIA may, in accordance with that framework, determine whether petitioner was in fact convicted of an aggravated felony.

---

[13] *See, e.g.*, *Dulal-Whiteway*, 501 F.3d at 126-27 (observing that "we have explicitly found statutes divisible only where the removable and non-removable offenses they describe are listed in different subsections or comprise discrete elements of a disjunctive list of proscribed conduct"; "we have not explicitly queried whether this logic extends to a statute . . . where only one type of generic conduct . . . is proscribed, but an alien can commit the conduct both in ways that would render him removable . . . and in ways that would not . . . ."); *James v. Mukasey*, 522 F.3d 250, 255 (2d Cir. 2008) (noting the open question to which *Dulal-Whiteway* called attention).