07-3031-ag
Martinez v. Mukasey

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2008

(Argued: August 25, 2008                          Decided: December 18, 2008)

Docket No. 07-3031-ag

_____

ELVIS MARTINEZ,

*Petitioner*,

v.

MICHAEL MUKASEY, Attorney General of the United States,[1]

*Respondent.*

_____

Before: WINTER, NEWMAN, and CALABRESI, *Circuit Judges.*

_____

MATTHEW L. GUADAGNO (Jules E. Coven & Kerry W. Bretz, on the brief), Bretz & Coven, New York, N.Y., *for Petitioner*.

MICHAEL C. HEYSE, Trial Attorney, Office of Immigration Litigation, *for* Jeffrey S. Bucholtz, Assistant Attorney General, Civil Division, Washington, D.C., *for Respondant*.

Alina Das & Manuel Vargas, New York State Defenders Association, New York, N.Y.; Nancy Morawetz, Washington Square Legal Services, New York, N.Y., *Amicus Curiae in Support of Petitioner*

_____

---

[1]Under Fed. R. App. P. 43(c)(2), Alberto Gonzales should be replaced by now-Attorney General Michael Mukasey. The Clerk of the Court is instructed to amend the caption accordingly.

CALABRESI, *Circuit Judge*:

Petitioner, Elvis Martinez, was convicted of two state drug offenses for distribution of a small quantity of marihuana.[2] The question before us is whether, under *Lopez v. Gonzales*, 127 S. Ct. 127 S. Ct. 625 (2006), these state convictions are "aggravated felonies" under the INA. To determine whether the state convictions count as aggravated felonies, we must decide whether they are the equivalent of federal felony drug trafficking, under the Controlled Substances Act (CSA), *see* 21 U.S.C. §§ 841(a)(1), (b)(1)(D), or rather are the equivalent of a federal misdemeanor in light of the CSA's mitigating exception that punishes distribution of "a small amount of marihuana for no remuneration" as a misdemeanor, *see* 21 U.S.C. § 841(b)(4). Because the state conviction could have been for nonremunerative transfer of as little as two grams of marihuana, we hold that under our categorical approach, Petitioner's conviction is the equivalent of a federal misdemeanor under the CSA and not an aggravated felony.

## I. Factual and Procedural Background

### A. Prior Criminal Convictions

Elvis Martinez is a 27-year-old native of the Dominican Republic. He has been a lawful permanent resident of the United States since 1989. On March 3, 2000, Martinez was convicted following a guilty plea of criminal sale of marihuana in the fourth degree, a misdemeanor, in violation of N.Y. Penal Law § 221.40. On April 18, 2001, he again pled guilty and was convicted of the same offense.

---

[2]Because the Controlled Substances Act uses the spelling "marihuana," *see, e.g.*, 21 U.S.C. § 841(b)(4), we use that spelling throughout this opinion.

## B.    Initial Round of Removal Proceedings

The Government began removal proceedings against Martinez by serving him with a Notice to Appear on June 21, 2001.  The Government initially charged two grounds of removability based solely on the March 2000 conviction.  The first was for conviction of a controlled substance violation, pursuant to INA § 237(a)(2)(B)(I), 8 U.S.C. § 1227(a)(2)(B)(I).  The second ground was for conviction of an aggravated felony, as defined in INA § 101(a)(43)(B), pursuant to INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii).

A hearing was held before an Immigration Judge (IJ) on September 24, 2003.  Martinez admitted committing a controlled substance violation but denied that he had been convicted of an aggravated felony.  He, therefore, conceded removability under INA § 237(a)(2)(B)(i), but sought cancellation of removal, for which he was eligible so long as he was not found to have committed an aggravated felony.

At the same hearing, Martinez relied on a Third Circuit case, *Steele v. Blackman*, 236 F.3d 130, 131 (3d Cir. 2001), which held that a conviction under New York Penal Law § 221.40 did not constitute an aggravated felony.  Martinez further argued that our decision in *United States v. Simpson*, 319 F.3d 81 (2d Cir. 2002), which seemingly cut against him, was limited to the sentencing context only and did not cover removability.

After considering whether  Martinez had been convicted of an aggravated felony within the meaning of the INA, the IJ ruled on October 24, 2003 that Martinez's drug convictions were aggravated felonies, thereby precluding his eligibility for cancellation of removal under INA § 240A(a)(3).  The IJ characterized the question as "troubling." He said that the BIA had held in *In re Elgendi*, 23 I. & N. Dec. 515 (BIA 2002), that a state drug offense was only an aggravated

3

felony if it was a felony in the state in which it was committed, but that the Second Circuit had held in *Aguirre v. INS*, 79 F.3d 315 (2d Cir. 1996), and *Simpson*, 319 F.3d at 85, that a state drug offense was an aggravated felony if it would be a felony under federal law. Declaring himself bound by the Second Circuit, the IJ held that Martinez's convictions were aggravated felonies. The BIA summarily affirmed.

Martinez filed a habeas petition in the Eastern District of New York on April 15, 2004. It was transferred to the Western District of New York and then, after full briefing to the district court, transferred to the Second Circuit on June 20, 2005, pursuant to the REAL ID Act.

The case was argued before our court on May 18, 2006. The panel initially waited to make a decision until the Supreme Court had ruled in *Lopez v. Gonzales*, 127 S. Ct. 625 (2006). After the Supreme Court decided *Lopez*, we requested supplemental briefing on the impact of that decision. On May 8, 2007, we remanded the case to the BIA for reconsideration in light of *Lopez.*

### C.      Remand to the BIA

On remand, the BIA did not request briefing. Rather, the Board simply rendered a new decision ordering that Martinez should be removed as an aggravated felon who is thus ineligible for relief. The Board observed that under *Lopez*, the question of whether Martinez's state conviction was an aggravated felony under the INA rested upon whether that crime would have been punishable as a felony under the CSA, 21 U.S.C. § 801 et. seq. The Board reasoned that the New York crime of sale of marihuana is comparable to the federal crime of marihuana

4

distribution, 21 U.S.C. § 841(a)(1), which pursuant to 21 U.S.C. § 841(b)(1)(D), is punishable by up to five years in prison and is therefore a felony.

In so doing, the BIA held that although the distribution of "a small amount of marihuana for no remuneration" is punished as a misdemeanor under 21 U.S.C. § 841(b)(4), that misdemeanor provision is a mitigating exception in a sentencing statute in which a federal defendant bears the burden of showing that he falls into the lower misdemeanor category. The Board held, therefore, (a) that Martinez bore the burden of showing that his state crime was the equivalent of a federal misdemeanor and (b) that he had not met this burden.

## II.    Discussion

### A.    Standard of Review

Whether a conviction qualifies as an aggrevated felony is a question of law, *Dulal-Whiteway v. DHS*, 501 F.3d 116, 120 (2d Cir. 2007), which we review *de novo*, 8 U.S.C. § 1252(a)(2)(D).

### B.    Legal Framework

A permanent resident alien is eligible to apply for cancellation of removal if the alien "(1) has been an alien lawfully admitted for permanent residence for not less than 5 years, (2) has resided in the United States continuously for 7 years after having been admitted in any status, and (3) has not been convicted of any aggravated felony." 8 U.S.C. § 1229b(a). Only the third of these conditions is in dispute in this case.

In pertinent part, the INA defines the term "aggravated felony" to include "illicit trafficking in a controlled substance (as defined in Section 102 of the Controlled Substances Act)

5

including a drug trafficking crime (as defined in section 924(c) of title 18, United States Code)." INA § 101(a)(43)(B), *as added by* § 7342, 102 Stat. 4469, *and as amended by* § 222(a), 108 Stat. 4320, 8 U.S.C. § 1101(a)(43)(B), 8 U.S.C. § 1101(a)(43). Under the CSA, a "controlled substance" is "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of [21 U.S.C. § 812]." 21 U.S.C. § 802(6). Marihuana is a schedule I drug under the CSA. 21 U.S.C. § 812.

The general phrase "illicit trafficking" is left undefined, but 18 U.S.C. § 924(c)(2) identifies the subcategory by stating that a "drug trafficking crime" is "any felony punishable under the Controlled Substances Act" (or under either of two other federal statutes having no bearing on this case). Following the listing, § 101(a)(43) of the INA provides in its penultimate sentence that "[t]he term [aggravated felony] applies to an offense described in this paragraph whether in violation of Federal or State law" (or, in certain circumstances, "the law of a foreign country."). 8 U.S.C. § 1101(a)(43). The United States Supreme Court has held that "a state offense constitutes a 'felony punishable under the Controlled Substances Act' only if it proscribes conduct punishable as a felony under that federal law." *Lopez*, 127 S. Ct. at 633. Thus, for a state drug offense to qualify as a "drug trafficking crime" and, by extension, an aggravated felony, it must correspond to an offense that carries a maximum term of imprisonment exceeding one year under the CSA. *See id.* at 631 & n.7.

In deciding whether a conviction fits within the definition of "aggravated felony" in 8 U.S.C. § 1101(a)(43), we have followed the Supreme Court in adopting a "categorical approach." *Gertsenshteyn v. Mukasey,* 544 F.3d 137, 143 (2d Cir. 2008). Under this approach, which is sometimes called the *Taylor-Shepard* approach, after *Taylor v. United States*, 495 U.S. 575

(1990), and *Shepard v. United States*, 544 U.S. 13 (2005), "'the singular circumstances of an individual petitioner's crimes should not be considered, and only the minimum criminal conduct necessary to sustain a conviction under a given statute is relevant[.]'" *Gertsenshteyn,* 544 F.3d at 143 (quoting *Dalton v. Ashcroft*, 257 F.3d 200, 204 (2d Cir. 2001)) (alteration in original).[3] We thus "'look to the elements and the nature of the offense of conviction, rather than to the particular facts relating to petitioner's crime.'" *Dulal-Whiteway*, 501 F.3d at 121 (quoting *Canada v. Gonzales*, 448 F.3d 560, 565 (2d Cir. 2006)).[4]

---

[3] The INA, in explaining the consequences of an aggravated felony, states that "[a]ny alien who is *convicted* of an aggravated felony . . . is deportable," INA § 237(a)(2)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii) (emphasis added), and that "[t[he Attorney General may cancel removal in the case of an alien . . . [who] has not been *convicted* of any aggravated felony," INA § 240A(a)(3), 8 U.S.C. § 1229b(a)(3) (emphasis added). The only question therefore relevant to evaluating any individual case is what was encompassed in the *conviction*.

[4] There is a limited exception: "When 'a criminal statute encompasses diverse classes of criminal acts – some of which would categorically be grounds for removal and others of which would not – we have held that [the] statute[] can be considered 'divisible''; the agency may then 'refer[] to the record of conviction for the limited purpose of determining whether the alien's conviction was under the branch of the statute that permits removal.'" *Gertsenshteyn,* 544 F.3d at 143 (quoting *Dickson v. Ashcroft*, 346 F.3d 44, 48-49 (2d Cir. 2003)). Neither party has indicated anything in the record of conviction that would bring about a different result were the modified categorical approach to apply. Accordingly, we take no position as to whether this provision is subject to the modified categorical approach.

7

The outcome of such a categorical inquiry, moreover, may be different when defining aggravated felonies in the immigration context than in the sentencing context. This is the result of our bifurcated approach to defining aggravated felonies. *See United States v. Pornes-Garcia,* 171 F.3d 142 (2d Cir. 1999); *Aguirre v. INS*, 79 F.3d 315 (2d Cir. 1996). In *Pornes-Garcia*, we considered the "narrow issue" of "whether this Court's construction of the phrase 'aggravated felony' in a deportation statute applies to the same phrase used in the Sentencing Guidelines for purposes of determining a sentencing enhancement for an immigration offense." 171 F.3d at 143. We held that it does not. *See id.* at 143-45. Therefore, to the extent that we must define an aggravated felony, that definition need not comport with the definition used outside of the immigration context.[5]

_____

[5] The bifurcated approach may not be without its problems. *See, e.g., Clark v. Martinez*, 543 U.S. 371, 378 (2005) ("To give these same words a different meaning for each category would be to invent a statute rather than interpret one"). In *Pornes-Garcia*, however, responding to the defendant's argument that this bifurcated approach violated normal rules of statutory construction, we stated that while "[n]ormally, the same term appearing in different portions of a single act is taken to have the same meaning in each appearance, . . . and this rule applies with equal force where different sections of an act incorporate the same definition of a particular term. . . . Nevertheless, like many rules of statutory construction, this one is not without its exceptions." 171 F.3d at 147. (internal citations omitted). We referred to the Supreme Court's statement that "'[w]here the subject matter to which the words refer is not the same in the several places where they are used, or the conditions are different, or the scope of the legislative power exercised in one case is broader than that exercised in another, the meaning well may vary to

**C.    Analysis**

Martinez argues chiefly that the BIA erred in placing the burden on him to show that his New York State conviction did not fall within the federal misdemeanor provision, 21 U.S.C. § 841(b)(4), and in finding that his New York State conviction was the equivalent of a federal felony under 21 U.S.C. §§ 841(a)(1), (b)(1)(D), rather than a federal misdemeanor under 21 U.S.C. § 841(b)(4).

New York Penal Law § 221.40, criminal sale of marihuana in the fourth degree, covers distribution of very small quantities of marihuana. One is "guilty of criminal sale of marihuana in the fourth degree when he knowingly and unlawfully sells marihuana except as provided in section 221.35 of this article." N.Y. Penal Law § 221.40. Section 221.35 punishes sale of two grams or less or a single marihuana cigarette for no consideration. Section 221.40, therefore, covers sale of over two grams of marihuana.[6] While section 221.40 covers criminal "sale," the

---

meet the purposes of the law.'" *Id.* (citing *Atl. Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433 (1932)).

[6] Looking to the rest of the New York statutory scheme suggests that while the text of section 221.40 covers both small and large quantities of marihuana, larger quantities are in practice addressed by another section. Section 221.45, criminal sale in the third degree, covers distribution of more than 25 grams. Therefore, while section 221.40 may cover any quantity over two grams, it arguably covers only quantities below 25 grams, with any larger quantity falling into section 221.35. The statutory scheme as a whole thus suggests that Martinez's conviction is not simply one that may have been for very small quantities of drugs but likely was for a quantity

9

definition of "sale" under New York law is a broad one that includes "any form of transfer of a controlled substance," whether or not the transfer was for money. *People v. Starling*, 650 N.E.2d 387, 390 (N.Y. 1995).

Federal law makes it a felony for any person "knowingly or intentionally to manufacture, distribute, or dispense, or possess with intent to distribute, or dispense, [marihuana]." 21 U.S.C. § 841(a)(1). The lowest level federal offense, which involves a maximum sentence of five years' imprisonment, applies, with an important exception, to anyone whose marihuana quantity is less than 50 kilograms. 21 U.S.C. § 841(b)(1)(D).[7] The exception, 21 U.S.C. § 841(b)(4), states that "[N]otwithstanding [21 U.S.C. § 841(b)(1)(D)], any person who . . . distribute[s] a small amount of marihuana for no remuneration shall be treated as provided in" 21 U.S.C. § 844, penalty for simple possession as misdemeanor. 21 U.S.C. § 841(b)(4) is not just a stand-alone subsection but is also referenced directly in 21 U.S.C. § 841(b)(1)(D), which states that for cases of less than 50 kilograms of marihuana, "except as provided in paragraphs (4) and (5) of this subsection," the maximum sentence is five years. We have stated that the activity covered by 21 U.S.C. §

below 25 grams. *Cf. Gonzales v. Duenas-Alvarez*, 127 S. Ct. 815, 822 (2007) (holding that "to find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to a state statute's language. It requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime.").

[7] 21 U.S.C. § 841(b)(1) defines a schedule of various quantities of distribution of marihuana. For example, 21 U.S.C. § 841(b)(1)(A)(vii) covers distribution of 100 kilograms or more; 21 U.S.C. § 841(b)(1)(B)(vii) covers 50 kilograms or more.

841(b)(4) is not merely "one of lesser degree than those covered by (b)(1)(D) but of a different type more akin to simple possession than to provisions intended to cover traffickers." *United States v. Outen*, 286 F.3d 622, 637 (2d Cir. 2002).[8]

Under the categorical approach, the Supreme Court has instructed us to look at the necessary elements of Martinez's state conviction and then determine whether those elements, if

---

[8] The CSA does not define a "small amount," and the federal courts of appeals have issued few precedential decisions clarifying the meaning of the phrase. *See, e.g., United States v. Fort*, 248 F.3d 475, 483 (5th Cir. 2001) (concluding that 561.2 pounds of marihuana is not a "small amount"); *United States v. Salazar-Flores*, 238 F.3d 672, 674 n.1 (5th Cir. 2001) (concluding that 195 pounds of marihuana is not a "small amount"). The Sixth Circuit has emphasized that 21 U.S.C. § 841(b)(4) was "designed to address the casual sharing of marihuana; behavior that is akin to mere possession rather than distribution." *Garcia-Echaverria v. United States*, 376 F.3d 507, 514 n.5 (6th Cir. 2004). In accordance with that understanding, the court held that although distribution of eight ounces of marihuana in violation of Kentucky law was a "small-scale drug transaction," it did not qualify for misdemeanor treatment under 21 U.S.C. § 841(b)(4) because it represented "more than casual sharing." *Id.* The Seventh Circuit has held that the term "small amount" has no absolute meaning and that the scope of the term depends not only on the weight of the marihuana distributed, but also on the context in which it is distributed. *See United States v. Damerville*, 27 F.3d 254, 258-59 (7th Cir. 1994) (holding that conspiracy to distribute 17.2 grams of marihuana in prison could not be treated as a federal misdemeanor because 17.2 grams was not a "small amount" in prison, even if it would be so considered when distributed in the general community).

prosecuted pursuant to federal criminal law, would necessarily be punishable as a felony. *See Lopez*, 127 S. Ct. at 630, 633; *see also Dalton,* 257 F.3d at 204. Martinez's New York conviction could have been for any form of nonremunerative transfer of as little as two grams of marihuana. *See* N.Y. Penal Law § 221.40; *Starling*, 650 N.E.2d at 390. Although the precise bounds of 21 U.S.C. § 841(b)(4) are not well defined, the minimum conduct of which Martinez might have been convicted is of "a different type more akin to simple possession than to provisions intended to cover traffickers." *Outen*, 286 F.3d at 637.[9] As the categorical approach requires, we look no further than to the fact that Martinez's conviction could have been for precisely the sort of nonremunerative transfer of small quantities of marihuana that is only a federal misdemeanor under 21 U.S.C. § 841(b)(4).

The Government first attempts to avoid this straightforward application of the categorical approach by arguing that the question of law currently before us was already decided in *United*

---

[9] Indeed, this application of 21 U.S.C. § 841(b)(4) tracks the reasoning of *Lopez* in which the Supreme Court stated that the term "illicit trafficking" in the INA — the term we are ultimately defining — should be read consistently with the "commonsense conception" and "everyday understanding" of the term. 127 S. Ct. at 629-30. While the CSA may indeed classify as felonies crimes that depart from such an everyday understanding of the term "trafficking," *Lopez* instructs that such departures are permissible where congressional intent is clear. In the case before us, congressional intent, as evidenced by the CSA, instructs precisely the opposite — that minor nonremunerative transfers be treated only as misdemeanors and therefore not, under the INA, as drug trafficking crimes.

12

*States v. Simpson*, 319 F.3d 81. That is simply not the case. *Simpson* was a sentencing enhancement case that construed "aggravated felony" under U.S.S.G. § 2L1.2(b), as applied to three convictions under N.Y. Penal Law § 221.40 (the same statute at issue in the present case). *Simpson* held that the convictions were "punishable under federal law" as felonies, and therefore were aggravated felonies "for purposes of sentencing under the Guidelines." *Id.* at 85. The panel attached a footnote to the relevant passage saying, "We offer no comment on whether such convictions constitute 'aggravated felonies' for any purpose other than the Guidelines." *Id.* at 86 n.7.

*Simpson* does not in any way dictate the answer to the question of law now before us. It is quite self-consciously only the law of the circuit for cases under the Sentencing Guidelines. *See id.* at 86 n.7. Moreover, because *Simpson* in no way could — or sought to — overrule the use of the bifurcated approach, *see United States v. Wilkerson*, 361 F.3d 717, 732 (2d Cir. 2004), even without its stated limitation to the sentencing context, it would not define an aggravated felony under the INA.[10]

_____

[10] The exact current precedential significance of *Simpson* is questionable even on its own terms. For one thing, it seemed to rely on a noncategorical approach that has essentially been rejected by the Supreme Court in *Lopez*. *Compare Simpson*, 319 F.3d at 85, *with Lopez*, 127 S. Ct. at 633. Moreover, the appellant in *Simpson* did not himself challenge whether he was an aggravated felon. *See* 319 F.3d at 82. Although in *Simpson* we did state that the appellant's possession conviction was an "aggravated felony . . . because that offense would have been punishable as a felony under the CSA," 319 F.3d at 85-86 & n.6 (citing 21 U.S.C. § 844(a)), the appellant conceded that he was an aggravated felon, *see id.* at 82, and argued only about the

13

The Government further attempts to avoid a straightforward application of the categorical approach by arguing that it was Martinez's burden to prove that his state conviction would be punishable under 21 U.S.C. § 841(b)(4), and hence not be an aggravated felony. This argument is unavailing. The very basis of the categorical approach is that the *sole* ground for determining whether an immigrant was convicted of an aggravated felony is the minimum criminal conduct necessary to sustain a conviction under a given statute. *Dalton,* 257 F.3d at 204. This does not require Martinez to prove how little marihuana he had or the nature of the transfer, so long as his conviction could have been based on a nonremunerative transfer of a small amount of marihuana. Placing the burden on Martinez, instead, necessarily requires looking into evidence of Martinez's actual conduct, evidence that may never have been seen by the initial convicting court. It was the desire to avoid such particular inquiries — whether designed to show that a specific defendant was less or more culpable than what his actual conviction required — that led us and the Supreme Court to focus on categorical analysis.

Nor does the categorical approach leave room for the BIA to enter into the sort of fact finding that would be required if the burden were on aliens to prove that their state conviction

structure of the Sentencing Guidelines and the application of the rule of lenity, *see United States v. Simspson*, Brief of Appellant, 2002 WL 32391097; Reply Br. of Appellant, 2002 WL 32391096. For that reason, the statement in *Simpson* that prior drug convictions establish an automatic felony may have been nonbinding dicta, even in the sentencing context. *Cf. Cen. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 363 (2006) ("[W]e are not bound to follow our dicta in a prior case in which the point now at issue was not fully debated."); *Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 118 (1993); *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993).

14

falls into the federal misdemeanor exception, 21 U.S.C. § 841(b)(4). "The *Taylor* and *Shepard* Courts were also concerned with the practical implications of requiring a district court to take and weigh extraneous evidence, both in terms of fairness to the defendant and burden on the court." *Gertsenshteyn,* 544 F.3d at 143. For "the BIA and reviewing courts are ill-suited to readjudicate the basis of prior criminal convictions." *Dulal-Whiteway*, 501 F.3d at 132.[11] In short, were Martinez to bear the burden, the BIA would be required to look to "the particular facts relating to petitioner's crime" to determine if the petitioner committed an "aggravated felony," and that is precisely what we have instructed the agency not to do. *See id.* at 121 (internal quotation marks and citations omitted).

The Government makes one additional and rather startling argument. It contends that because under 8 U.S.C. § 1228(c)(4), Martinez bears the burden of proving that he is eligible for cancellation relief, he has to show not only that he has not committed an aggravated felony, but also that the particular conduct which led to his conviction in state court would not qualify as a federal felony. This argument flies in the face of the categorical approach insofar as it requires any alien seeking cancellation of removal to prove the facts of his crime to the BIA. Although an alien must show that he has not been convicted of an aggravated felony, he can do so merely by showing that he has not been *convicted* of such a crime. And, as we have discussed *supra*, under the categorical approach, a showing that the minimum conduct for which he was convicted was not an aggravated felony suffices to do this.

---

[11]And to the extent that an alien might not foresee a later deportation, he could be in a position of trying to prove a drug quantity years after a conviction without easy access to records or witnesses.

15

We conclude that the BIA erred by placing the burden on Martinez to show that his conduct was the equivalent of a federal misdemeanor. We further hold that his conviction for violation of N.Y. Penal Law § 221.40 establishes nothing more than a crime punishable under 21 U.S.C. § 841(b)(4). We therefore VACATE the BIA's decision and REMAND for further consideration consistent with this opinion.